## STATE v. GEORGE J. GORDON.

1. On trial of an indictment for unlawfully conveying or taking away a woman child under the age of fifteen years, with intent to seduce, &c., under section 82 of the Crimes act, she is a competent witness to testify on behalf of the state.
2. If the defendant brought her within this state from another, and here, with the intent set out in the statute, interposed his will or persuasion between her and her guardian's control, so as to overcome her intention to return to her home, the abduction is accomplished, and he may be indicted in this state.

On error to the Court of General Quarter Sessions of the Peace of Hudson county.

Argued at June Term, 1884, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE, SCUDDER and REED.

For the state, *C. H. Winfield.*

For the defendant, *Puster, Daly & Ryerson.*

The opinion of the court was delivered by

SCUDDER, J.  The defendant was indicted under section 82 of the act for the punishment of crimes, for the abduction and seduction of a girl under the age of fifteen years.  He was found guilty and sentenced to the state prison for the term of

five years.  Many objections were taken at the trial to the admissions of testimony, and requests to charge were made to the trial judge, some of which were granted and others refused.  Two exceptions only were argued on the return to the writ of error, the others having been abandoned.  The first was an exception to the admission of the witness A B, the child in question, on the part of the state, against the defendant, because she was alleged to be the wife of the defendant, and therefore an incompetent witness.  When this objection was made by the defendant's counsel the court directed that the witness be examined on the *voir dire* as to the alleged marriage.  She was questioned as to the form of a marriage ceremony extracted in part from the marriage service used in the Protestant Episcopal Church, and said to have been repeated by the parties when they were together, without any witness, in Brooklyn, Long Island, State of New York.  She denied that there was any such ceremony.  She was shown a certificate in writing, signed by her and the defendant, dated November 2d, 1883, which stated that they had been married by repeating certain portions of the Episcopal marriage service.  She testified that when she signed it he told her it was only a joke.  Certain letters were shown her which she admitted had been written and signed by her after November 2d, 1883, in which she addressed him as her husband and called herself his wife.  These she said were addressed and signed in that way because he told her to do so, and she had agreed and intended to marry him in the following spring.  On December 3d, 1883, she left her home in Astoria, and went with him to the mayor's office in the city of New York to be married, but the mayor declined to marry them because of her youthful appearance.  On the same day she went with him to Jersey City, where she was introduced as his wife by the defendant to friends of his residing there.  She was silent before them.  They occupied the same bed-room at a hotel in that city for a night, a day and part of the second night, when the defendant was arrested on pursuit and complaint of her adopted father, who had never given his consent to a marriage

between them. Her parents were both dead. It had also been testified by her older sister that she was born in October, 1869, and was under the age of fifteen years when the alleged abduction took place. The defendant's counsel offered section 1 of the New York Marriage act, (*Rev. Stat., vol. III., p.* 227,) by which marriage in that state is a civil contract, to which the consent of parties capable in law of contracting shall be essential; and also section 3 of the same act, making void a marriage where either of the parties to a marriage shall be incapable for want of age and understanding of consenting to a marriage, &c , or when the consent of either party shall have been obtained by force or fraud; also section 26 of the New York Crimes act, making it criminal to take away any female under the age of *fourteen* years from her father, mother, guardian or other person, without their consent, either for the purpose of prostitution, concubinage or marriage. After the above examination the court allowed the witness to be sworn on the part of the state, and to this an exception was prayed, allowed and sealed.

There was no error in the admission of this witness to testify. If she had, in her examination, admitted that she was the wife of the defendant, and that his allegations were true, a different question might have arisen under the statutes of the State of New York, where it was claimed the ceremony of marriage took place; but she denied them, and whether they were married or not was a disputed question in the cause. The court did right, at that stage of the trial, in accepting her statements on the *voir dire* for the purpose of allowing her to be sworn in behalf of the state against the defendant. It would be a *petitio principii* to assume, on a bare allegation, that she was the wife of the defendant, and therefore disqualified to be a witness against him, when one of the questions at issue was whether there was ever a valid marriage between them. He was undoubtedly a competent witness, by statute, to prove his defence, and there was therefore the greater reason why the state should not be deprived of her testimony. The contrary rule would exclude the most im-

portant testimony on the part of the state, and leave the defendant to prove his own case without possibility of contradiction, when they only were present, and artifice, constraint ·or force was used to extort apparent consent to marriage from a mere child by the overpowering will of a man so much older ·than she. He was forty-seven years old.

It is only where there has been a valid marriage that the parties are excluded from giving evidence for or against each other by the common law. *Ros. Crim. Ev.* 124; 1 *Greenl. Ev.*, § 339; *Whart. Crim. Ev.* 390. It has therefore been held in indictments for bigamy, after proof of the first marriage, that the second woman married is a competent witness against her husband, for the second marriage is void and she is no wife. To test this competency the woman may be examined on the *voir dire* as to this void marriage. *Whart. Crim. Ev.*, §§ 395–397; 1 *East P. C.* 469; *Seeley* v. *Engell*, 13 *N. Y.* 542.

Courts have even gone further and held that on the trial of an indictment for the forcible abduction and marriage of a woman, under the statute prohibiting such marriage, she may be a witness for the crown, and that this is not a case within the general law excluding the testimony of a wife against her husband, for she is not legally his wife, a contract of marriage, like any other contract, obtained by force, having no obligation in law. *Brown's case, Vent.* 243; *Fulwood's case, Cro. Car.* 483; *Rex* v. *Wakefield*, 2 *Lewin C. C.* 279; 1 *Hale P. C.* 301; 2 *Hawk. P. C., ch.* 46, § 78; 2 *Russ. Cr.* 984.

Our statute enacts that every such marriage, as therein described, of any woman child within the age of fifteen years shall be void if the man contract matrimony with her without the consent of her father, mother or guardian. In any view that may be taken of the alleged contract of marriage and the acts attending and following it, it is evident that there are some facts to which she must necessarily testify to prevent this statute, intended for the protection of parents and their young female children, from becoming useless. The court were right

in admitting the girl's testimony, and leaving its credibility to the jury.

The second point of exception that was argued by counsel was that the court charged in effect, among other things, that if the jury found that the defendant brought the girl to Jersey City, and there detained her either by force or by persuasion, it was such an unlawful conveying and taking away within this state as is contemplated by the statute. This instruction was correct. A girl, within the protection of the statute, is in the possession, custody or governance of her parent or guardian though she be not in the same house with them. If not in their actual possession when in the streets, in school or in some place of public resort, or visiting in the house of friends, she is so constructively. She is still in their custody for care, keeping and security, and under their governance, for they may control her will by their command. If she go upon a journey, they may follow her and direct her return to them. The mere fact that she entered another state does not alter her relations or obligations with her parent or guardian. Whenever the defendant, with the intent set out in the statute, interposed his will or persuasion between her and her guardian's control, so as to overcome her purpose and intention to return to her home, the abduction is accomplished. Nor can her willingness to come to this state with him take away his offence, for, by our statute, he can give no consent, and whenever she intends to return to her guardian, he may not dissuade or oppose her. In this sense I understand the words used by the court in *Regina* v. *Mycock*, 12 *Cox C. C.* 28, where it is said that a girl who is away from her home is still in the custody or possession of her father if she has the intention of returning to him. Baron Bramwell, in *Regina* v. *Olifier*, 10 *Cox C. C.* 402, says, " If, finding she has left her home, he [the defendant] avails himself of that to induce her to continue away from her father's custody, in my judgment he is guilty if his persuasion operated on her mind so as to induce her to leave." Nothing can be plainer in this case than that his persuasion induced her to leave her home in Astoria and come

with him to Jersey City, and when there, after, as she testifies, he had read to her the account in the papers of her elopement with him, she wished to return to her home, he sought, by persuasion, to keep her, and opposed her expressed wishes to go back. The mere fact of her leaving her guardian's home and coming to this state with the defendant might not complete the crime with which he was·charged, but when the intent was here manifested to seduce or contract matrimony with her by proclaiming her as his wife in the presence of his friends, and keeping her a day and night in a sleeping-room at a hotel, and opposing her wish to return home, he became amenable to the punishment affixed by our law to this statutory crime. These facts, which appear in the case, if found by the jury, would constitute the crime of abduction within this state, and there was no error in the direction of the court.

The judgment is affirmed.